## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS
## EASTERN DIVISION

| | | |
|---|---|---|
| **CLAUDIA DURAN,** | ) | |
| On Behalf of Herself and All Others | ) | JURY TRIAL DEMANDED |
| Similarly Situated, | ) | |
| | ) | |
|       Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No.:  1:19-CV-10286-RGS |
| | ) | |
| **CURRICULUM ASSOCIATES, LLC** | ) | |
| | ) | |
|       Defendant. | ) | |

### PLAINTIFF'S ASSENTED-TO MOTION FOR FINAL APPROVAL
### OF CLASS ACTION SETTLEMENT AND ORDER OF DISMISSAL

Nothing has changed regarding the Parties' settlement since this Court granted preliminary settlement approval on January 17, 2020 (Doc. 21). No class member objected to the settlement. No class member sought exclusion from the settlement. Indeed, the class member reaction to the settlement is very positive. Thus, Plaintiff respectfully requests that this Court grant final approval of the settlement and dismiss this case with prejudice.

As Plaintiff Claudia Duran detailed in her preliminary approval motion (Doc. 20), she brought this case on behalf of current and former Account Specialists and Senior Account Specialists who work(ed) for Defendant in Massachusetts. Plaintiff asserted claims against Defendant under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.*, the Massachusetts overtime statute, Mass. Gen. Laws. C. 151 § 1A, *et seq.,* and the Massachusetts Wage Act, M.G.L. c. 149 § 148. She alleged that Defendant misclassified her and similarly situated employees as exempt from overtime, and did not pay them the required overtime compensation which violated the FLSA and Massachusetts law. Defendant contested these allegations, and at all times has denied that it violated any wage laws. After months of litigation and lengthy negotiations, the Parties have succeeded in reaching a proposed class action settlement of this case.

This Court granted preliminary approval of the settlement on January 17, 2020 (Doc. 21). After that date and pursuant to the Parties' settlement agreement, Plaintiff's counsel distributed the settlement notice via regular mail and email to the 43 class members. No class members object to the settlement or seek exclusion from it. Under the settlement agreement terms, class members are not required to submit any claim form or other documentation to participate in the settlement. Thus, all class members will receive a check after this Court finally approves the settlement.

By this Motion, Plaintiff now seeks (1) final certification of a Rule 23 class for settlement purposes only, and (2) final approval of the Parties' settlement and dismissal of this case with

prejudice.  Defendant assents to this Motion.  Plaintiff has submitted a Proposed Order with this Motion.

As Plaintiff establishes below and described in her preliminary approval motion (Doc. 20), this Court should grant final approval under Rule 23(e)(2) because the proposed settlement is fair, reasonable, and adequate.  The settlement results in substantial cash payments to the class members and Defendant's reclassification of the positions at issue as of April 1, 2020.  The proposed settlement pays a total of $425,000 in consideration for a release of the overtime and wage-related claims of a Rule 23 class of approximately 43 individuals.  After attorney's fees and expenses, and a proposed service award, Plaintiff's counsel estimates that the amount being paid to the Rule 23 class constitutes more than 80% of the potential unpaid overtime damages had the class ultimately succeeded at trial.  Class members will receive an average check of more than $6,200 after deduction for attorney fees, expenses, and service award.  The proposed settlement is thus fair, reasonable, and adequate, and that it provides a substantial benefit to the class members, while accounting for the substantial risks and delays associated with continued litigation.  This includes the risk that Plaintiff would not have successfully certified the class and Defendant would have succeeded on its affirmative defenses.  This Court should thus grant final approval of the settlement and dismiss this case with prejudice.

## I.  THE FACTUAL BACKGROUND AND THE SETTLEMENT AGREEMENT TERMS SUPPORT FINAL APPROVAL.

Plaintiff set out the terms of the Parties' settlement in her preliminary approval motion.  *See* Doc. 20, pp. 3-4.  Plaintiff will  briefly summarize the settlement again here.  The proposed Rule 23 Settlement Class consists of all persons who worked as an Account Specialist and/or Senior Account Specialist in Massachusetts for all or part of the period from February 19, 2016 to November 15, 2019.  Assuming final approval, the class portion of the settlement funds will be

distributed to Rule 23 class members because no class member seeks exclusion from the settlement. In other words, there is no claims process and every class member will receive a settlement payment. The settlement shares will be calculated based on the number of weeks that each class member worked for Defendant during the relevant time period and the class member's earnings during that time period.

Under the proposed settlement, Defendant shall pay a total of $425,000, to be allocated as follows:

- $266,619 for the Class Shares of participating class members;

- $15,000 service payment to the named Plaintiff, Claudia Duran; and

- $141,666 for Class Counsel's attorneys' fees and $1,715 in costs.

Defendant will issue the proposed settlement checks within 21 days after this Court's Final Approval Order becomes non-appealable. Any amounts remaining in the final distribution due to uncashed checks will be returned to Defendant.[1] Class counsel has and shall continue to perform all settlement administration duties in-house, including mailing of the settlement notice, tracking any objections or requests for exclusion, calculating settlement shares, and coordinating with Defendant to have checks issued to class members. Class counsel is not seeking any additional fees or costs associated with these duties, which will likely preserve thousands of dollars in class funds that are often spent on costly third-party settlement administration.

---

1 The Parties do not anticipate that there will be any uncashed checks due to the relatively small size of the class and the fact that Plaintiff's counsel is administering the settlement in-house. The Post Office returned only two mailed notices as undeliverable. Plaintiff's counsel has communicated with these two class members and now the Parties have current addresses for both class members.

Furthermore, Defendant reclassified the Account Specialist and Senior Account Specialist jobs as salaried, non-exempt jobs effective April 1, 2020, and employees in those jobs have been eligible for overtime payment as of that date.

In early February 2020, the court approved notice was distributed to 43 class members via mail and email. No class member has excluded himself/herself from the settlement class. The class members will thus be bound by a classwide release of all claims based upon or related to the facts pled in the Complaint, including claims related to Defendant's alleged failure to pay all overtime wages due.

Finally, no class member has objected to the settlement.

## II.    THE RULE 23 FACTORS FULLY SUPPORT FINAL APPROVAL OF THE PARTIES' SETTLEMENT.

It is well established that courts favor settlements of lawsuits over continued litigation. *See, e.g., Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *E.E.O.C. v. Astra U.S.A., Inc.*, 94 F.3d 738, 744 (1st Cir. 1996) ("We do not doubt that public policy strongly favors encouraging voluntary settlement"); *Durett v. Housing Auth. of Providence*, 896 F.2d 600, 604 (1st Cir. 1990) (recognizing the "clear policy in favor of encouraging settlements"); Newberg on Class Actions, §11:41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy"). The advantages of settlements are particularly apparent in the compromise of class actions, which are "often complex, drawn out proceedings demanding a large share of finite judicial resources," *Mayfield v. Barr*, 985 F.2d 1090, 1092 (D.C. Cir. 1993), and "where one proceeding can resolve many thousands . . . of claims that might otherwise threaten to swamp the judiciary," 2 McLaughlin on Class Action § 6:3.

The Federal Rules of Civil Procedure require court approval of class action settlements, and mandates approval of such settlements if they are "fair, reasonable, and adequate." Fed. R.

Civ. P. 23(e); *see also In re Relafen Antitrust Litig.*, 360 F. Supp. 2d 166, 195 (D. Mass. 2005). In order to determine whether the settlement is "fair, reasonable, and adequate," this Court looks to Rule 23(e)(2)'s approval factors, which examine whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) relief provided for the class is adequate, taking into account:
>
> > (i) the costs, risks, and delay of trial and appeal;
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Here, this Court should finally approve the proposed settlement because an examination of the Rule 23 "fairness" factors demonstrates that the proposed settlement in this case is fair, reasonable, and adequate. Notably, settlements in wage and hour class action cases brought by Class counsel have been approved in dozens of cases. These settlements contained terms similar to the proposed settlement in this case, including a similar method for notifying class members, distributing the settlement fund, allocating incentive payments, and providing for the one-third attorneys' fees award.[2]

---

[2] See Doc. 20-2, Ex. B, Meeks Dec.; see also cases include the following settlements approved in the District of Massachusetts and Massachusetts Superior Court: Garcia v. E.J. Amusements of New Hampshire, Inc., C.A. No. 13-12536 (D. Mass. 2015); DaSilva et al v. CleanNet USA, Inc., C.A. No. 12-10580 (D. Mass. 2013); Matamoros et al v. Starbucks Corporation, C.A. No. 08-10772 (D. Mass. 2013); Cutter et al v.

**A. Class Counsel and Plaintiff Duran Have Adequately Represented the Class under Rule 23(e)(2)(A).**

Here, the named Plaintiff Duran and Class counsel have more than adequately represented the interests of the class. The Parties engaged in litigation for almost one year, conducting full written discovery, and including Plaintiff's initial briefing of motions for conditional certification and class certification. Through discovery, Class counsel obtained full payroll and employment data of the putative Rule 23 class members from which they could calculate potential damages that could have been recovered if they were successful in their claims. The named Plaintiff responded to written discovery, was heavily involved with Class counsel to attempt to resolve this matter, and has provided invaluable assistance throughout the prosecution of this action. There are no conflicts between the named Plaintiff and members of the settlement class. Class counsel has decades of experience in representing employees in successful class and collective action wage cases. Class counsel drew on this experience in representing Plaintiff and the Class in this case.

**B. The Proposed Settlement Was Negotiated At Arm's Length Under Rule 23(e)(2)(B).**

The Parties negotiated their settlement at arms-length. Prior to settlement discussions, the Parties conducted both formal written discovery and informal discovery to make sure the Parties had sufficient information to value the case. Class counsel analyzed classwide payroll information

---

HealthMarkets, Inc., C.A. No. 10-cv-11488 (D. Mass. 2012); Abla et al. v. Brinker Restaurant Corp., Civ. A. No. 10-10373 (D. Mass. 2011); Kiely et al v. TripAdvisor, C.A. 08-11284 (D. Mass. 2011); Maliniski et al. v. Starwood Hotels, Civ. A. No. 08-11859 (D. Mass. 2010); Hayes et al. v. Aramark Sports Service LLC, Civ. A. No. 08-10700 (D. Mass. 2009); Johnson et al. v. Morton's Restaurant Group, Civ. A. No. 05-11058 (D. Mass. 2009); See, e.g., Reekie v. Ronit Hospitality LLC, Middlesex C.A. No. 1681-cv-0434 (Mass. Super. May 23, 2017); Corado v. Rufo Cleaning & Maintenance Co., Suffolk C.A. No. 15-1529 (Mass Super. 2016); DeSouza v. The Solomon Partnership Inc. d/b/a All-Pro Cleaning Systems, Middlesex C.A. No. 11-0792 (Mass Super. Aug. 23, 2016); Lavitman v. Uber Technologies, Inc. et al, Suffolk C.A. No. 2012-4490 (Mass. Super. 2015); Hernandez v. Harvard University, Middlesex C.A. 2012-3759 (Mass. Super. 2014); McCue v. A&M Andrade Management Corp., Suffolk C.A. 2013-1702 (Mass. Super. 2014); St. Cyr v. Mass. Institute of Technology, Norfolk C.A. No. 2012-01135 (Mass. Super. 2014); Branchaud v. Ruby Tuesday, Inc., Norfolk C.A. No. 2012-00216 (Mass. Super. 2013).

to determine the potential damages that could be recoverable if the class was to ultimately succeed at trial. The Parties then eventually reached a settlement after months of negotiations.  Such due diligence in the negotiation process is necessarily indicative of a fair result. *See generally In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 640 (E.D. Pa. 2003) ("A presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery").

### C. The Relief the Settlement Provides Is Fair and Adequate Under Rule 23(e)(2)(C)(i) in Light of the Risks of Proceeding to Trial.

The relief the settlement offers is more than adequate.  Plaintiffs estimate that the $425,000 settlement approximates more than 80% of the class members overtime damages if they had been successful in all their claims spanning the entire class period.  The settlement payments average more than $6,200 per class member which is real money (after deduction for attorney fees, expenses, and service award). Although Plaintiff was confident in the merits of her claims, Defendant had asserted a number of affirmative defenses and had employee survey information which casts doubt on the number of overtime hours the Class actually worked.   As a result, the total settlement award represents a fair settlement of the Class members' claims, particularly considering the hurdles that remained for the workers to obtain class certification and succeed on their claims.

In addition, Defendant has agreed to reclassify the Account Specialist and Senior Account Specialist positions as of April 1, 2020.  Thus, employees who hold those positions will receive overtime compensation for hours worked after that date.

Based upon the above, including uncertainties presented in proceeding with the case, as well as likely significant delays in obtaining any compensation even if Plaintiff was ultimately successful at trial, Plaintiff and her counsel believe that the proposed settlement is an excellent

result for the Class. *See generally Norris v. Lake Conway Landscaping of Orlando, Inc.*, 2015 WL 3632314, at *2 (M.D. Fla. June 10, 2015) (holding that a compromise for 41.6% of the total damages initially claimed by plaintiff was reasonable due to "bona fide disputes" concerning FLSA provisions); *Clayton v. Knight Transp.*, 2013 WL 5877213, at *5 (E.D. Cal. Oct. 30, 2013) (approving Rule 23 settlement where with "approximately fifty percent of the amount of unpaid overtime to which they would be entitled should they prevail at trial"); *Moreyra v. Fresenius Med. Care Holdings, Inc.*, 2013 WL 12248139, at *3 (C.D. Cal. Aug. 7, 2013) (Rule 23 settlement approval where gross settlement amount was "approximately 32 percent of the lost wages"); *see also In re Currency Conversion Fee Antitrust Litig.,* 2006 WL 3247396 at *6 (S.D.N.Y. Nov.8, 2006) (approving settlement of "roughly 10-15%" of the allegedly illegal fees collected from the class).

### D. The Notice Process and the Method for Distributing Relief to the Class Are Both Effective Under Rule 23(e)(2)(C)(ii).

The notice process, which this Court previously approved, has proven to be highly effective and successful. Notice was sent to 43 class members via First Class mail and email. The Post Officer returned two mailed notices as undeliverable.  Class counsel subsequently communicated with the two class members, obtained updated addresses for them, and confirmed they received the notice materials and supported the settlement.   The notice contained a concise explanation of the lawsuit, the value of the settlement, the anticipated amount of attorney's fees and the service award, and the steps to be taken if a Class member wished to exclude himself or herself or object to the settlement.  No Class member excluded from or objected to the settlement.

Importantly, the Parties structured the settlement so that all class members will receive payment, and they are not required to submit a claim form to receive funds under the settlement. Thus, the Parties anticipate that all class members will obtain the benefits of the settlement.

**E. The Required Attorney's Fees And Expenses Are Reasonable Under Rule 23(e)(2)(C)(iii).**

Plaintiff has requested that one-third of the $425,000 settlement fund ($141,666) be paid in attorney's fees. The one-third amount for attorney's fees, which has been consistently approved by the courts in the cases listed in footnote 3, is fair and reasonable and this Court should approve such fees in this case as well. Moreover, even considering a "lodestar crosscheck," this amount of attorneys' fees is eminently reasonable. Class counsel has now billed more than 180 hours litigating this case for almost a full year, engaging in extensive discovery, motion practice related to notice under the FLSA, class certification, conducting a comprehensive damages analysis prior to settlement negotiations, settlement agreement and approval motion drafting, and communicating with class members regarding the case and settlement. Thus, the requested fees currently result in a multiplier of about 1.15 which is very reasonable. Indeed, courts frequently award fees where the lodestar 'multiplier" is far higher than what is requested here. *See In re Relafen Antitrust Litig.*, 231 F.R.D. at 82, *citing Vizcaino*, 290 F.3d at 1051 n. 6 (charting lodestar multipliers in common fund settlements and noting "a range of 0.6—19.6 with most (20 of 24, or 83%) from 1.0–4.0 and a bare majority (13 of 24, or 54%) in the 1.5–3.0 range").

Moreover, as with all cases of this nature handled by Plaintiff's counsel's firm, Plaintiff's counsel accepted this case on a fully contingent arrangement, with no payment up front, and have borne all the expenses, costs, and risks associated with litigating this case. The notice informed class members that one-third of the settlement proceeds would be used to pay for attorneys' fees. No class member objected.

A one-third attorney's fee in a common fund case like here has been consistently approved as reasonable. *See, e.g., In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Lit.*, 56 F.3d 295 (1st Cir. 1995) (awarding attorneys' fees of $68 million out of a $220 million

settlement fund).[3]  Courts favor awarding fees from a common fund based upon the percentage of

the fund method.  As the Supreme Court has explained:

> [T]his Court has recognized consistently that a litigant or a lawyer who recovers a
> common fund for the benefit of persons other than himself or his client is entitled
> to a reasonable attorneys' fee from the fund as a whole. . . .  Jurisdiction over the
> fund involved in the litigation allows a Court to prevent . . . inequity by assessing
> attorney's fees against the entire fund, thus spreading fees proportionately among
> those benefited by the suit.

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (citations omitted); *see also Blum v. Stenson*,

465 U.S 886, 900 n.16 (1984).

Among the advantages of the percentage approach recognized by the First Circuit in

*Thirteen Appeals* was the fact that it is less burdensome to administer than the lodestar method.

*See Thirteen Appeals*, 56 F.3d at 307.  The court in that case also endorsed the percentage of

recovery approach because it is result-oriented, thereby promoting the more efficient use of

---

[3] In Thirteen Appeals, the First Circuit noted that other Courts of Appeals have *required* the use of
percentage awards in common fund cases. See, e.g., Camden Condominium Ass'n v. Dunkle, 946 F.2d 768,
771 (11th Cir. 1991); Swedish Hospital Corp. v. Shalala, 1 F.3d 1261, 1271-72 (D.C. Cir. 1993).  See also
Matamoros et al v. Starbucks Corporation, C.A. No. 08-10772 (D. Mass. 2013) (approving award of one-
third attorneys' fee for a $23.5 million settlement in a Tips Law class action); Johnson et al. v. Morton's
Restaurant Group, Civ. A. No. 05-11058 (D. Mass. 2009) (approving award of one-third attorneys' fee for
a $12 million settlement in a Tips Law class action);  In Re: Lithotripsy Antitrust Litigation, No. 98 C 8394,
2000 U.S. Dist. LEXIS 8143 at *6-7 (N.D. Ill. June 12, 2000) (noting that 33.3% of the fund plus expenses
is well within the generally accepted range of the attorneys fee awards in class-action lawsuits); In re:
Medical X-Ray Film Antitrust Litigation, 1998 U.S. Dist. LEXIS 14888, *21 (E.D.N.Y. Aug. 7, 1998)
(awarding a fee of $13 million, which represented one-third of the settlement); In re Crazy Eddie Securities
Litig., 824 F. Supp. 320, 325-26 (E.D.N.Y. 1993) (awarding 34% of a $42 million fund); City National
Bank v. American Com. Financial Corp., 657 F. Supp. 817 (W.D.N.C. 1987); Hwang v. Smith Corona
Corp., B.89-450 (D. Conn. Mar. 12, 1992) (awarding one-third of $24 million fund); Chalverus v.
Pegasystems, Inc., Civ. A. No. 97-12570 (D. Mass. 2000) (awarding as an attorneys' fee one-third of a
more than $5 million recovery); In re: Peritus Software Servs., Inc. Sec. Litig., Civ. A. No. 98-10578 (D.
Mass. 2000); In re Copley Pharm., Inc. Sec. Litig., Civ. A. No. 94-11897 (D. Mass. 1996) (awarding one-
third of a $6.3 million settlement fund); Morton v. Kurzweil Applied Intelligence, Inc., Civ. A. No. 10829
(D. Mass. Feb. 4, 1998); In re Gillette Securities Litigation, Civ. A. No. 88-1858 (D. Mass. Mar. 30, 1994);
Wilensky v. Digital Equipment Corporation, Civ. A. No. 94-10752 (D. Mass. 2001); In re Picturetel
Corporation Sec. Litig., Civ. A. No. 97-12135 (D. Mass. Nov. 4, 1999) (approving award of one-third of a
$12 million settlement fund); Zeid v. Open Environment Corp., Civ. A. No. 96-12466 (D. Mass. 1999)
(awarding a fee of one-third of a $6 million settlement).

attorney time and resources, rather than encouraging attorneys to prolong litigation in order to inflate their recoverable hours. *See id.* ("[U]sing the [percentage of fund] method . . . enhances efficiency, or, put in the reverse, using the lodestar method in such a case encourages inefficiency. Under the latter approach, attorneys not only have a monetary incentive to spend as many hours as possible (and bill for them) but also face a strong disincentive to early settlement").

Similarly, the Court observed that the percentage method better approximates the workings of the marketplace by ensuring that attorneys receive compensation for the true value of their services and skills. See id. ("Another point is worth making: because the [percentage of fund] technique is result-oriented rather than process-oriented, it better approximates the workings of the marketplace. . . . the market pays for the result achieved"), *quoting In re Continental Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992).

Finally, awarding a percentage of the common fund, such as the one-third fee in this case, recognizes and encourages the vital role that contingency arrangements play in making legal counsel available to individuals who cannot afford hourly fees.[4]  Unlike traditional firms that receive hourly fees on a monthly basis, plaintiff's attorneys who take cases on contingency often spend years litigating cases (typically while incurring significant out-of-pocket expenses for experts, transcripts, document production, and so forth), without ever receiving any ongoing payment for their work.  Sometimes fees and expenses are recovered; other times, despite hundreds

---

[4]  In approving one-third contingency fees for such cases, courts have recognized that Plaintiffs' counsel who take cases on contingency, including the undersigned, often spend years litigating cases vigorously without receiving any payment at all for their work.  The system of permitting attorneys to accept work on a contingency basis recognizes that in many cases, attorneys will not receive any payment for years (if at all), and in some cases they will receive larger payments. See, e.g., Hensley v. Eckerhart, 461 U.S. 424, 448 (1983).  Such a system allows parties access to the courts who would not otherwise be able to find competent, and successful, counsel to represent them.

or even thousands of hours of work, nothing is recovered.  This type of practice is viable only if attorneys, having received nothing for their work on some cases, receive more in other cases than they would if they charged hourly fees.  Courts have long recognized this reality.  *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 448 (1983) (noting that "[a]ttorneys who take cases on contingency, thus deferring payment of their fees until the case has ended and taking upon themselves the risk that they will receive no payment at all, generally receive far more in winning cases than they would if they charged an hourly rate").  For that reason, courts have routinely approved one-third fee awards in class settlements, recognizing "the attorneys' fees requested [are] entirely contingent upon success.  Proposed Class Counsel risk[s] time and effort and advance[s] costs and expenses, with no ultimate guarantee of compensation."  *Macedonia Church v. Lancaster Hotel, LP*, 2011 WL 2360138, *14 (D. Conn. June 9, 2011).

By permitting clients to obtain attorneys without having to pay hourly fees, this system provides critical access to the courts for people who otherwise would not be able to find competent counsel to represent them.  That access is particularly important for the effective enforcement of public protection statutes, such as the wage laws at issue in this case.  It is well recognized that "private suits provide a significant supplement to the limited resources available to [government enforcement agencies] for enforcing [public protection] laws and deterring violations."  *Reiter v. Sonotone Corp.*, 442 U.S. 330, 344 (1979) (addressing anti-trust laws).  This reasoning applies with equal force to wage and hour claims.  *See Skirchak v. Dynamics Research Corp., Inc.*, 432 F. Supp. 2d 175, 179 (D. Mass. 2006) ("Allowing private attorneys to prosecute [wage] actions in the aggregate effectively ensures enforcement of the wage laws by motivating employers to comply or face potentially large-scale litigation, and by providing counsel with an incentive to pursue such claims"), *aff'd* 508 F.3d 49 (1st Cir. 2007).

12

For these reasons, and given this precedent approving one-third recovery for attorneys' fees in class action cases just like this one, the Court should award the requested one-third recovery in this case as well.

In addition, the proposed settlement includes payment of Plaintiff's counsel's out of pocket expenses of $1,715. *See* Doc. 20-2, Ex. B, Meeks Dec. Plaintiff's counsel does not seek reimbursement for the additional expenses they have incurred and will incur in administering the settlement.

### F.  The Settlement Treats Class Members Equitably Under Rule 23(e)(2)(D).

Finally, all settlement class members receive equitable treatment under the settlement. Based on Plaintiff's counsel's review of payroll records and investigation of the class claims, Plaintiff's counsel has concluded that a uniform formula for calculating settlement shares that provides each individual class member with a set amount for each week that they worked based upon their earnings is the most fair and reasonable formula to distribute funds to the class. Based upon this formula, the Parties calculated the proposed settlement distribution to the Class Members as contained in the Parties' Settlement Agreement.

## III.    RULE 23 PROVIDES THAT FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE.

In granting preliminary approval of the settlement, this Court certified the proposed settlement class. Plaintiff now moves for final certification of the Settlement Class pursuant to the requirements of Fed. R. Civ. P. 23(a) and (b).  The Parties' Settlement Agreement defines the proposed Rule 23 settlement class as follows:

> All persons who worked as an Account Specialist and/or Senior Account Specialist for Defendant in Massachusetts for all or part of the period from February 19, 2016 to November 15, 2019.

This Court must decide that the Parties have satisfied the Rule 23 prerequisites to finally approve the Parties' settlement. "To obtain certification of a class action for money damages under Rule 23(b)(3), a plaintiff must satisfy Rule 23(a)'s ... prerequisites of numerosity, commonality, typicality, and adequacy of representation ... and must also establish that 'the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013), quoting Rule 23(b)(3). The proposed settlement class here satisfies Rule 23(a) and (b)(3).

1.  Numerosity

The 43 person settlement class satisfies the first requirement of Rule 23(a) that "the class is so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). The numerosity requirement is a "low threshold." *Garcia–Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009). "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." Id. (*quoting Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir.2001)); *see also George v. Nat'l Water Main Cleaning Co.*, 286 F.R.D. 168, 173 (D. Mass. 2012) ("[C]ourts have generally found that a class size of forty or more individuals will satisfy the numerosity requirement.").

2.  Commonality

The second requirement of Rule 23(a) is that there must be "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). The commonality prerequisite "is not a difficult one to meet." *In re Relafen Antitrust Litig.*, 231 F.R.D. at 69. Commonality is satisfied when the claim arises out of a companywide policy or practice. *See, e.g., Overka v. American Airlines*, 265 F.R.D.

14, 18 (D. Mass. 2010) (the "commonality requirement is usually satisfied" where "implementation of [a] common scheme is alleged"); *Ramirez v. Riverbay Corp.*, 39 F.Supp.3d 354, 364 (S.D.N.Y.2014) ("[C]ourts addressing the commonality requirement after Dukes have typically held that the requirement is satisfied where employees claim that they were denied minimum wage or overtime compensation as a result of a corporate employment policy." (collecting cases)).

Here, the proposed class satisfies the "commonality" requirement for settlement purposes because the claims of Settlement Class are predicated on a core common issue: whether Defendant correctly classified them as exempt employees. *See, e.g., McLaughlin v. Liberty Mut. Ins. Co.*, 224 F.R.D. 304, 309 (D. Mass. 2004); *see also Kirby v. Cullinet Software, Inc.*, 116 F.R.D. 303, 306 (D. Mass. 1987) (*quoting Berenson v. Fanueil Hall*, 100 F.R.D. 468, 470 (D. Mass. 1984)).

   3.   Typicality

Third, Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). The class satisfies typicality when the class members' claims "arise from the same event or practice or course of conduct that gives rise to the claims of other class members, and [be] based on the same legal theory." *Garcia–Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009) (internal quotation marks omitted). A "finding of typicality will generally not be precluded even if there are 'pronounced factual differences' where there is a strong similarity of legal theories." *In re Carbon Black Antitrust Litig.*, 2005 WL 102966, at *12 (D. Mass. Jan. 18, 2005)

Here, the settlement class satisfies the typicality requirement because Plaintiff's claims for unpaid overtime due to alleged misclassification are identical to the overtime claims the Rule 23 class members. *See, e.g., Garcia v. E.J. Amusements of New Hampshire, Inc.*, 98 F.Supp.3d 277,

288 (D. Mass. 2015) (holding that plaintiff's "overtime claims are typical of the claims he intends to bring on behalf of the class" and certifying class under Rule 23).

### 4. Adequacy

Fourth, Rule 23(a)(4) requires that the "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). To satisfy the adequate representation requirement, "[t]he moving party must show first that the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985); *Bouchard v. Sec. of Health & Human Servs.*, 1982 WL 594675, at *7 (D. Mass. Jan. 11, 1982).

Here, the named Plaintiff shares interests identical to those of the putative class members; namely, all seek to obtain unpaid overtime wages due alleged misclassification. Further, Class Counsel are experienced wage and hour attorneys who has been found to be "adequate" counsel in a number of prior wage-and-hour class actions. *See,* Doc. 20-2, Ex. B, Meeks Dec.; *Garcia v. E.J. Amusements of New Hampshire, Inc.*, 98 F.Supp.3d 277, 289 (D. Mass. 2015) (finding that counsel at Lichten & Liss-Riordan "is experienced and more than capable of proceeding with the litigation").

### 5. Predominance

The proposed Settlement Class also meet Rule 23(b)(3)'s requirements. When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only. *See Amchem*, 521 U.S. at 618-620. A showing of manageability of trial is not required. *Id*. The test is "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U. S. at 623. Although Rule 23(b)(3) requires that

16

common issues of law and fact predominate, it does not require that there be an absence of any individual issues. *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 39 (1st Cir. 2003). Plaintiff is not required to prove that each "elemen[t] of [her] claim [is] susceptible to classwide proof." *Amgen, Inc., supra*.  Courts have routinely held that the predominance requirement is satisfied in misclassification overtime cases such as this case.  *See generally Lyons v. Citizens Fin. Grp., Inc.*, 2012 WL 5499878, at *3-*4 (D. Mass. Nov. 9, 2012) (certifying class under Rule 23 where all plaintiffs performed identical duties and challenged their classification as exempt from overtime pay).

Here, common questions of law and fact predominate for settlement purposes. Plaintiff contends that Defendant has not paid any overtime compensation because Defendant misclassified the settlement class as exempt.  Thus, the settlement class presents, for settlement purposes, common operative facts and common questions of law which predominate. These common questions of law and fact include: (a) whether Account Specialists and Senior Account Specialists primarily perform non-exempt duties under Massachusetts state laws; (b) whether Defendant's classifying them as exempt is proper; and, (c) whether Defendant has violated Massachusetts state laws by failing to pay them overtime wages.

### 6. Superiority

The requirement of superiority ensures that resolution by class action will achieve economies of time, effort, and expense, and promote uniformity of decisions as to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results. *In re Relafen Antitrust Litig.*, 231 F.R.D. at 70. The requirement is also designed to ensure the "vindication of the rights of groups of people who individually would be without effective strength to bring their opponents to court at all." *Amchem*, 521 U.S. at 617.

Here, the settlement class likewise meets the superiority requirement in this settlement context because this settlement will resolve overtime claims of numerous employees in a single, consolidated proceeding thus obviating the need for multiple lawsuits. The settlement provides the Settlement Class with an opportunity to obtain prompt, predictable and certain relief.  In contrast, individualized litigation carries uncertainty, risk and costs, and provides no guarantee that a party will obtain necessary and timely relief. Settlement also relieves judicial burdens caused by adjudication of the same issues in multiple trials.  *See, e.g., Garcia,* 98 F.Supp.3d at 292 (superiority satisfied because consolidated wages action better than many individual actions).

Accordingly, based upon the above, this Court should finally certify the Class for settlement purposes only.

## IV.    THE INCENTIVE PAYMENT IS FAIR AND REASONABLE, AND SUPPORTED BY THE APPLICABLE PRECEDENT.

The proposed settlement includes a modest incentive payment of $15,000 for the lead plaintiff, Claudia Duran, who initiated this case, and has been actively involved in prosecution of this action since its inception.  Plaintiff Duran's commitment to this action made classwide relief possible.

This incentive payment is eminently reasonable in this case, as Duran expended time and effort to bring these claims on behalf of herself and her co-workers assisting Plaintiff's counsel in prosecution of these wage claims, responding to written discovery, and actively participating in settlement negotiations.  The notice informed Class members of the incentive payment and no Class member objected.

Courts have routinely approved incentive payments in class settlements as a way of compensating class representatives for lending their names, reputations, and efforts to the prosecution of litigation on behalf of others, and to promote class settlements while encouraging

plaintiffs to act as "private attorneys general" in the enforcement of state and federal law.  *See In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005) ("Incentive awards are recognized as serving an important function in promoting class action settlements, particularly where, as here, the named Plaintiff participated actively in the litigation"), *quoting In re Lupron*, 228 F.R.D. 75, 98 (D. Mass. 2005); *In re Compact Disc Min. Adver. Price Antitrust Litig.*, 292 F. Supp. 2d 184, 189 (D. Me. 2003) ("Because a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit"); Savett, *et al.*, "Consumer Class Actions: Class Certification Issues, Including Ethical Considerations and Counsel Fees and Incentive Payments to Named Plaintiff," 936 PLI / Corp. 321, 340 ("It has become commonplace for the named representatives to request a special payment for having borne the flag and headed a class action.  Most courts are receptive to this because they feel that private attorneys general should be encouraged, and such incentives further the goals of federal and state laws"); *see also Sheppard v. Consol. Edison Co. of New York, Inc.,* 2002 WL 2003206, *5-6 (E.D.N.Y. 2002) (collecting cases approving incentive payments).

It is not uncommon for courts to approve incentive payments in much higher amounts than has been requested here.  *See, e.g., Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (awarding $300,000 to each of four representative Plaintiff); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990) (citing cases in support of incentive payments and awarding payments ranging from $35,000 to $50,000 for named Plaintiff); *Yap v. Sumintomo Corp. of America*, 1991 WL 29112, *9 (S.D.N.Y. 1991) (awarding $30,000 additional compensation to representative Plaintiff).  *See also Matamoros et al v. Starbucks Corporation*, C.A. No. 08-10772 (D. Mass. 2013) (approving $25,000 incentive payments for lead Plaintiff in wage action); *DaSilva et al v. CleanNet USA, Inc.*, C.A. No. 12-10580 (D. Mass. 2013)

(same); *Abla v. Brinker Restaurant Corp.*, Civ. A. No. 10-10373 (D. Mass. 2011) (same); *Hayes v. Aramark Sports Service LLC*, Civ. A. No. 08-10700 (D. Mass. 2009) (same); *Apana v. Fairmont Hotels & Resorts, Inc.*, Civ. A. No. 08-00528 (D. Haw. 2011) (same).

## V.    CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that this Court enter an order 1) granting final certification of the Rule 23 class for settlement purposes only; 2) granting final approval of the parties' proposed settlement as fair, reasonable, and adequate, and 3) dismissing this case with prejudice.


Dated:  April 10, 2020

Respectfully submitted,

/s/ Rowdy B. Meeks
Rowdy B. Meeks*, Kansas Bar No.16068
**Rowdy Meeks Legal Group LLC**
8201 Mission Road, Suite 250
Prairie Village, Kansas 66208
Tel:  (913) 766-5585
Fax:  (816) 875-5069
Rowdy.Meeks@rmlegalgroup.com
www.rmlegalgroup.com

*pro hac vice motion granted*

Shannon Liss-Riordan, BBO #640716
Adelaide Pagano #690518
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Tel:  (617) 994-5800 Fax: (617) 994-5801
sliss@llrlaw.com
apagano@llrlaw.com
www.llrlaw.com

Attorneys for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 10, 2020, a copy of this document was served by electronic filing on all counsel of record.

*/s/  Rowdy B. Meeks*
Rowdy B. Meeks, Attorney for Plaintiff